**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CRIMINAL ACTION NO. 3:24CR-00025-BJB**
**(Filed Electronically)**

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.           **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

CORTES EDWARDS                                                                                  DEFENDANT

\* \* \* \*   \* \* \* \*   \* \* \* \*

Comes the Defendant, Cortes Edwards, by counsel, and respectfully moves this Honorable Court pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, Rule 12(b)(3) of the Federal Rules of Criminal Procedure, and all other applicable authority for an order suppressing the use at trial of any evidence obtained as a result of an illegal search of his property on or about September 20, 2023.  In support of this motion the Defendant offers the following:

**FACTS**

The Defendant was originally charged and convicted in case no. 3:20CR-00093-BJB of Possession of a Firearm by a Prohibited Person.  He was sentenced on March 4, 2022 to thirty (30) months imprisonment with two (2) years of supervised release to follow.  Mr. Edwards' supervision began on December 23, 2022.  On September 18, 2023, an arrest warrant (USA-31) for Failure to Appear at Initial Appearance for Supervised Release Violation was issued for the Defendant by the District Court for the Western District of Kentucky.  (Arrest Warrant, attached as Defendant's Exhibit 1).  There is nothing in the arrest warrant authorizing a search of any kind.  It is simply a warrant to arrest Cortes Edwards for missing court.

On September 20, 2023, the Western Kentucky Regional Task Force (hereinafter WKRT) began surveillance at 433 N. 26th Street, Louisville, Kentucky.  According to the Report of Investigation (USA-32) turned over in discovery by the United States (attached as Exhibit 2), Mr. Edwards was observed by WKRT "exit the residence, look through a vehicle registered to his wife, return to the residence."  A short

time after law enforcement observed the Defendant, the Defendant's wife and other family members left the residence. (Exhibit 2).

After Edwards' family members left, seven members of WKRT approached the residence with guns drawn to execute the arrest warrant. The Report of Investigation states that as the WKRT team approached the residence, "movement was observed in the window of a second story room." (Exhibit 2). The United States has turned over bodycam footage (USA-35.mp4) of the arrest of Mr. Edwards and the subsequent search of his residence following his arrest. (Exhibit 3, filed separately with the clerks office). As seen on the video footage, during WKRT's approach at 09:25:18, an officer states, "we've got a window upstairs with bedroom light on." At no time on the bodycam video does any member of WKRT indicate by statement or action that any movement was seen in an upstairs window. Additionally, the window is apparent on the bodycam video as the Marshalls approach the residence and at no time is there any movement in the upstairs window. At 09:25:48, WKRT knocked on the door, called for the Defendant to come out and announced that he had a warrant and they were the police. (Exhibit 3). When Mr. Edwards did not respond, WKRT breached the door with a battering ram at 09:26:15. (Exhibit 3). Following the breach of the door, Cortes Edwards is immediately seen by WKRT and was ordered to come out. Mr. Edwards complied with no resistance and at gunpoint walked backwards out of the residence with his hands up and was taken into custody on the front porch. (Exhibit 3 at 09:26:33). Upon contact with WKRT, Mr. Edwards stated there was "nobody else in there." After effectuating the arrest of the Defendant, WKRT conducted a "sweep" of the residence. (Exhibit 2). The post arrest sweep of the residence is recorded on the bodycam video. (Exhibit 3). During the sweep of the residence, WKRT searched the entire structure. As a result of this search, marijuana was found in the kitchen and a gun was found in the upstairs bedroom under the bed. Neither of those items were in plain view from the officer's vantage point in the doorway following the arrest. As a result of this search by WKRT, Mr. Edwards has been charged in the present case with Prohibited Person in Possession of a Firearm.

Based upon these facts, the Defendant moves to suppress any and all evidence recovered during the search of his property on September 20, 2023 for the following reasons:

1. Marshalls exceeded the scope of the arrest warrant by searching the residence following Mr. Edwards' arrest outside on the porch of the residence; and

2. There was no specific, reasonable basis for a protective sweep of the residence.

## ARGUMENT

### A. The Officers exceeded the scope of the arrest warrant by searching the Defendant's residence after he was detained on the front porch of the residence and there was no justification for the protective sweep.

As detailed in the foregoing section, WKRT officers arrived at Mr. Edwards' residence and breached the front door with a battering ram after which Mr. Edwards walked out of the residence and was arrested on the front porch with no further incident. Following the Defendant's arrest, WKRT, in their own words, conducted a "sweep" of the residence. There is no evidence warranting a reasonable belief that there were other individuals presenting a danger to the officers that would authorize a protective sweep of the property following the detainment of Mr. Edwards outside the residence. For this reason, the search of Defendant's residence and subsequent seizure of evidence was a violation of his constitutional rights and should be suppressed.

Arrest warrants are limited in scope. Once executed, arrest warrants do not authorize the search of other areas of a defendant's property or residence. *See Maryland v. Buie,* 494 U.S. 325, 333 (1990) ("[o]nce [the defendant] was found, however, the search for him was over, and there was no longer that particular justification for entering any rooms that had not yet been searched"). To justify a search/protective sweep of a property or residence following an arrest, the Supreme Court has held:

> [a]s an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Id.* at 334.

The Sixth Circuit has held that, "where a defendant is arrested outside a home, a warrantless search of the home could be justified only if the officers had a specific reasonable basis for

believing…that they were in danger from persons inside." *U.S. v. Colbert,* 76 F.3d 773, 776 (6th Cir. 1996). While the Court declined to adopt a bright line rule prohibiting officers from conducting a protective sweep every time a person is arrested outside the home, it held that "the fact that the arrest takes place outside rather than inside the home affects only the inquiry into whether the officers have a reasonable articulable suspicion that a protective sweep is necessary by reason of a safety threat." *Id.* at 776-777.

In *United States v. Archibald,* 589 F.3d 289 (6th Cir. 2009), law enforcement went to Archibald's residence to execute two arrest warrants for probation violations. Archibald's apartment had a small porch and after Archibald answered the door, an officer pulled him out of the doorway and off the porch where he was arrested. Following the arrest, officers entered the apartment and performed a protective sweep which resulted in the discovery of illegal drugs and a firearm. The Court found that the protective sweep violated Archibald's constitutional rights as the United States failed to show articulable facts warranting a reasonable belief that Archibald's residence harbored an individual posing a danger to the officers.

Here, as in *Archibald,* Mr. Edwards was arrested subject to an arrest warrant on the porch of his residence. He was immediately detained and posed no danger to the officers. Officers thereafter entered his residence under the pretense of a "sweep" and searched his entire home resulting in the discovery of marijuana and a handgun, neither of which were in plain view while officers were at Edwards' door. The officers had no information to indicate that there was another individual in the residence and in fact had watched Mr. Edwards' wife and other family members leave prior to their approach to execute the warrant. The only information the officers had at the time of Mr. Edwards' arrest was that he had missed court for a probation violation.

The Marshall's report (Exhibit 2) indicates that during the officers' approach they observed movement in an upstairs window, which is presumably their justification for the protective sweep following the arrest. This statement in the report conflicts with the bodycam footage of the officer, who, while on approach, can be heard stating "we've got a window upstairs with bedroom light on." There is

specifically no mention/statement of movement in an upstairs window by any of the officers on the bodycam video-which would be likely called out for officer safety. A light on in an upstairs window is not a justification for a protective sweep of the entire residence. Furthermore, Mr. Edwards, upon being arrested, told the officers that there was nobody else in the house. The officers had no information contrary to that statement and in fact the information they had coincided with Mr. Edwards' assertion. As this Court held in *United States v. Rogers,* "Specific, articulable facts are required: 'more than ignorance or a constant assumption that more than one person is present in a residence.'" 2023 U.S. Dist. LEXIS 194261 (W.D. Ky., July 19, 2023) (quoting *United States v. Archibald,* 589 F.3d 289, 300 (6th Cir. 2009). For these reasons, the officers lacked justification for entering Mr. Edwards' home and as such, violated his constitutional rights under the Fourth Amendment.

## **CONCLUSION**

When U.S. Marshalls executed the arrest warrant for Mr. Edwards on September 20, 2023, on the front porch of his residence, their authority under the warrant ended. To conduct a protective sweep of the residence following his arrest outside, the officers needed specific articulable facts that another individual was inside the residence that posed a safety risk. There is no evidence of this and the officers had no reason to believe or even suspect that Mr. Edwards' was not alone in the residence at the time of his arrest. They exceeded their authority under the arrest warrant and the subsequent search of Mr. Edwards' home, following his arrest, was a violation of his Fourth Amendment rights and for this reason the suppression of the fruits of this search is warranted.

WHEREFORE, for the reasons cited above, Mr. Edwards respectfully requests the Court grant his motion to suppress the evidence in this matter.

Respectfully submitted,

/s/ Wayne Adams
THE LAW OFFICE OF MAC ADAMS
500 W. JEFFERSON STREET
SUITE 1100
LOUISVILLE, KENTUCKY 40202
(502) 694-0622
macrgr2002@gmail.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 26, 2024, I electronically filed this document through the CM/EMF filing system, which will serve opposing counsel via electronic mail.  Exhibit 3, the bodycam video was filed separately on a USB drive with the clerks office.

/s/ Wayne Adams
Counsel for Cortes Edwards